# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DONNA WALKER,

        **Plaintiff,**

                                **Civil Action 2:15-cv-3058**

v.

                                **Magistrate Judge Elizabeth P. Deavers**

RONETTE BURKES, *et al.*,

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court for Consideration of Defendants' Motion to Dismiss (ECF No. 37), Plaintiff's Memorandum in Opposition (ECF No. 40) and Defendants' Reply to the Response in Opposition (ECF No. 41). For the reasons that follow, the Motion to Dismiss is **DENIED**.

## I. BACKGROUND

On December 7, 2015, Plaintiff brought this civil rights action, pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986. (ECF No. 1; the "Complaint" or "Compl.") On December 29, 2016, this Court conditionally dismissed this action, giving Plaintiff fourteen days to move for leave to amend her complaint. (ECF No. 33.) After reviewing Plaintiff's Complaint and the law, the Court determined that Plaintiff needed to provide more factual context before the Court could conclude from the allegations that it is plausible Plaintiff "was engaging in speech as a private citizen, rather than in the course of her official duties." (ECF No. 33 at 9.)

> The Court, however, is unable to perform the requisite analysis of the surrounding circumstances of the speech because Walker has failed to satisfy her pleading burden. Viewing the Complaint in a light most favorable to Walker, "the Court is unable to discern, either directly or by reasonable inference, the specific

1

circumstances of [Walker's] allegedly protected communication. The complaint only supplies vague possibilities with respect to the requisite details." *Sanders v. McDowell*, 44 F. Supp. 3d 731, 735 (N.D. Ohio 2014).

(*Id.*)

On January 20, 2016, Plaintiff filed her Second Amended Complaint. (ECF No. 34; "Amended Complaint" or "Amend Compl.".) In her Complaint, Plaintiff, Donna M. Walker ("Walker" or "Plaintiff") alleges that Defendants violated her First Amendment rights by retaliating against her for reporting improper conduct on the part of her supervisor when she was previously employed at the Department of Rehabilitation and Correction, Ohio Reformatory for Women ("DRC").

Walker began working at the DRC as a storekeeper in the commissary on August 10, 2015. (Amend Compl. ¶ 7.) She describes her job duties as "supervising inmates in the commissary, sale of items in commissary, overseeing inventory (including reports), operating of a point of sale system, preparation of sales reports, profits and loss tracking reports, financial report; and ensuring the safety of inmates and non-inmates in the commissary." (*Id.* ¶ 8.) While working at the commissary, Walker allegedly witnessed her supervisor, Demetra Sanders ("Sanders"), commit violations of her job duties, including: giving food or other commissary items to inmates who worked in the commissary without charging the inmates; allowing at least four inmates to shop on days other than their assigned shopping days; refusing to allow Walker to check inmate balances, availability of funds or provide copies of receipts to inmates and staff requesting them; refusing to log damages, defective or opened food items on the commissary shelves which Walker reported to Sanders; refusing to allow Walker to use various software reports or daily paperwork duties; taking commissary items for personal use without paying; falsifying inventory lists or reports; and failing to follow safety operating procedure or protocol.

(*Id*. ¶¶ 11a–c, 18a–c.)  According to Walker, she "took notes in a notepad about her experiences working for [Sanders]."  (*Id*. ¶ 20.)  After Sanders impermissibly read Walker's notepad, Walker alleges, "her personality and behavior towards Plaintiff changed "to become "rude and verbally aggressive."  (*Id*. ¶ 21.)

Walker further alleges that she subsequently reported Sanders' conduct to Defendant, DRC Warden Roni Burkes ("Burkes"), among others.  (*Id*. ¶ 22.)  Walker also reported Sanders' alleged illegal conduct to an Office of the Inspector General and the Attorney General.  (*Id*. ¶ 24.)  She states that prior to starting her job for Defendant, she was required to attend two weeks of training at the Corrections Training Academy, where she was informed "that there were strict guidelines with respect to anyone in a position of financial responsibility such as a store clerk . . . [and the] mishandling of state funds was an offense and any such offense should be reported to the Office of the Inspector General or other authority."  (*Id*. ¶ 9.)  Walker states that the day after she reported Sanders' illegal conduct, Sanders "threw documents and/or other items in the dumpster," an action witnessed by a corrections officer who retrieved the documents and inventoried them.  (*Id*. ¶ 24.)  She alleges that she was terminated on September 4, 2015, immediately after reporting Sanders.  According to the Amended Complaint, the official reason given for the termination was "violating a company rule," but that Defendant Burkes told Walker the reason for her termination was "telling her supervisor how to do her job."  (*Id*. ¶¶ 25, 26.)  Plaintiff alleges that these reasons are pretextual, and she was terminated because she reported and spoke out on a matter of public concern "regarding Demetra Sander's unlawful acts … [including] efforts to silence Plaintiff, employment conditions, public official corruption, conspiracy, illegal activity and Defendant's protection of public safety."  (*Id*. ¶ 27.)

Defendants filed their Motion to Dismiss the Second Amended Complaint on February 2, 2017.  (ECF No. 37.)  On March 13, 2017, Plaintiff filed her Response in Opposition.  (ECF No. 40.)  Defendants filed their Reply in support of their Motion to Dismiss on March 27, 2017. (ECF No. 41.)

## II. STANDARD OF REVIEW

Defendants bring their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiff has failed to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints."  *16630 Southfield Ltd.*, *P'ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility of an inference depends on

4

a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

### III. ANALYSIS

The Court will readdress relevant law that applies to Plaintiff's First Amendment Claim. Plaintiff brings her claims against Defendants under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

In order to proceed under § 1983, a plaintiff must prove both that (1) the perpetrator acted under color of state law; and (2) the conduct deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir. 1983), *rev'd and remanded sub nom. Brandon v. Holt*, 469 U.S. 464 (1985). To sufficiently plead the first element, a plaintiff must allege "personal involvement" on the part of the defendant. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). This requirement arises because "§ 1983 liability cannot be imposed under a theory of *respondeat superior*." *Id.* (citation omitted).

The three elements of a First Amendment retaliation claim are as follows:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Rapp v. Putman*, No. 15-1995, 2016 WL 1211850 at *3 (6th Cir. Mar. 29, 2016) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*)) (internal quotes omitted).

"[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005).

Defendants move to dismiss this case, urging the Court to find Plaintiff's pleading deficient as "Walker fails to plead any new factual allegations saving her claim from dismissal." (Defendants' Motion to Dismiss ("Mot. Dismiss") at 2, ECF No. 37.) Defendants further reassert four reasons why Plaintiff's pleading is deficient. First, Defendants argue that Walker's Amended Complaint fails to allege she engaged in speech as a citizen rather than as a public employee. (Mot. Dismiss at 5–9.) Second, Defendants assert that Plaintiff's Complaint fails to allege that she engaged in speech that addressed a matter of public concern. (*Id*. at 10–13.) Third, Defendants maintain that Walker does not allege that Defendants personally committed any of the acts in question. (*Id*. at 13–14.) Last, Defendants argue that they are entitled to qualified immunity because Walker has failed to allege that either of the Defendants violated clearly established law protecting her rights. (*Id*. at 15–16.)

In response, Walker argues that she engaged in speech as a citizen, rather than as a public employee. (Plaintiff's Response in Opposition ("Pl.'s Opp.") at 8–11, ECF No. 40.) She further asserts that her speech involved matters of public concern. (*Id*. at 8–11.) Walker argues that she also sufficiently alleged personal knowledge on the part of both Defendants of her protected speech and claims that because Defendant Hill consulted with Defendant Burkes, prior to terminating her "Defendant Burkes and Hill were aware of Walker's reports regarding Sanders' activities ." (*Id.* at 14.) Finally, Walker states that Defendants violated her clearly established constitutional rights. (*Id*. at 10–11.)

**A. Speech as a private citizen on a matter of public concern**

A public employee "must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Id*. Nevertheless, the law cannot enjoin a citizen who works for the government from exercising "the liberties employees enjoy in their capacities as private citizens." *Id*. at 419. Specifically, public employees retain the right, "in certain circumstances" *Id*. at 417. In determining whether First Amendment protection applies to a public employee's speech, a two-part test is applied. "First, we must answer the threshold inquiry—did the employee speak as a 'citizen on a matter of public concern.'" *Boulton v. Swanson*, 795 F.3d 526, 531 (6th Cir. 2015) (quoting *Garcetti*, 547 U.S. at 418)). "If so, we then balance the justifications for a speech restriction against the employee's free speech interest." *Id*. The threshold inquiry is also comprised of a two-part test: (1) whether the employee was speaking as a private citizen; and (2) whether the topic of the speech was a matter of public concern. *Id*. at 531–32.

In *Haynes v. City of Circleville, Ohio*, a former local police officer and handler for the police department's canine unit in Ohio wrote a memo expressing his concerns that cost-cutting measures and a reduction in dog-training hours would result in the canine program becoming less effective at protecting the public. 474 F.3d 357, 359–60 (6th Cir. 2007). Haynes was ultimately fired based on the memo and other grievances he filed against management. *Id*. Applying *Garcetti*, the Sixth Circuit held that his protests regarding the training cutbacks were unprotected speech because he "was acting as a public employee carrying out his professional responsibilities." *Id*. at 364. The court characterized the "context of the memo as a whole . . . as

that of a disgruntled employee upset that his professional suggestions were not followed as they had been in the past." The court also noted that the "fact that Haynes communicated solely to his superior also indicates that he was speaking in his capacity as a public employee contributing to the formation and execution of official policy." *Id* (internal quotations omitted).

In *Weisbarth v. Geauga Park Dist.*, a State County park district employee asserted that she was fired in retaliation for comments she had made to a consultant hired by the park service to interview employees in the course of a departmental evaluation. 499 F.3d 538, 539 (6th Cir. 2007). Again applying *Garcetti*, the Sixth Circuit held that Weisbarth's comments to the consultant, wherein she discussed morale and performance issues, was not protected by the First Amendment because the speech was made pursuant to her official duties and not as a private citizen. *Id*. at 543. The court found Weisbarth's argument that her case was distinguishable from *Garcetti* unconvincing. In particular, the fact that Weisbarth was speaking with the consultant as part of an ad-hoc duty, rather than explicitly written job description duties, did not strip the commentary of falling under her official duties for the purposes of a retaliation claim. The court noted the similarity of the circumstances in *Haynes* with respect to this point—Haynes was also not writing a memo or providing feedback pursuant to a duty written into his official job description. *Id*. at 544.

More recently, however, in *Lane v. Franks*, the Supreme Court has instructed lower courts to refrain from reading *Garcetti* expansively. 134 S. Ct. 2369, 2379 (2014). The Court enumerated that "*Garcetti* said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment." *Id*. "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id*. Interpreting *Lane*, the Sixth

Circuit subsequently explained in *Boulton v. Swanson* that First Amendment protection does not apply to "speech that an employee made in furtherance of the ordinary responsibilities of his employment." 795 F.3d 526, 534 (6th Cir. 2015). By way of example, the court proceeded to find that "speech in connection with union activities is speech 'as a citizen' for the purposes of the First Amendment." *Id.* The Sixth Circuit has further clarified the factors courts should consider in determining whether an employee's speech is accorded First Amendment protection: "the ordinary scope of the employee's duties, the impetus for the speech, the setting, the audience, and the subject matter of the speech." *Holbrook v. Dumas*, 658 F. App'x 280, No. 15-4334, 2016 WL 4376428, at *7 (Aug. 16, 2016); *accord Stinebaugh v. City of Wapakoneta*, 630 F. App'x 522, 527 (6th Cir. 2015). In *Stinebaugh*, the court held that a firefighter who called three city councilmembers to express disapproval for his supervisors' plans to purchase a new heavy rescue engine was speaking as a private citizen, rather than in the official course of his duties. 630 F. App'x at 523, 527. In contradistinction, *Holbrook* characterized the plaintiff's speech as made pursuant to his official duties where he sent the e-mail in question from his official government account to his subordinates and signed it with his official title, Fire Chief. *Id.* The content of the e-mail concerned an impending cancellation of liability insurance that the Fire Chief warned could result in the loss of employee jobs. 2016 WL 4376428, at *7.

Previously, this Court held that it was "unable to perform the requisite analysis of the surrounding circumstances of the speech because Walker ha[d] failed to satisfy her pleading burden." (ECF No. 31 at 8.) Specifically, Plaintiff's previous Complaint did not provide sufficient information regarding the factual context necessary to examine "the scope of Walker's duties, the setting or form of the speech, or any details regarding the subject-matter." (*Id.*) In Plaintiff's previous complaint she alleged that she "reported Demetra Sanders' illegal conduct to

9

Business Administrator Bonaface Ogbonna, Warden Roni Burkes, and the Deputy Warden."

(Compl. ¶ 23.)  Walker also alleged that she "reported Demetra Sanders' illegal conduct to an

outside agency."  (*Id*. ¶ 24.)

In her Second Amended Complaint, Plaintiff sets forth additional facts supporting her

allegations and provides more of the requisite context in which the speech at issue was made.

These additional facts and statements regarding the circumstances satisfy Plaintiff's pleading

obligation to support a plausible inference that she spoke as a citizen and not as an employee.

For instance, as she explains in her Second Amended Complaint, Walker clarifies that the

"outside agency," to which she referred in her previous Complaint as the entity to whom she

lodged her complaints, included the Office of the Inspector General and the Attorney General's

office.   Plaintiff has not alleged, and the Court cannot perceive based on the pleadings, that

speaking out regarding her observations of perceived illegal activity, is within the scope of her

standard work duties.  Although at this stage of the proceeding, Plaintiff is not required to prove

her claim, she has set forth sufficient factual indicia that she acted as a private citizen

considering the facts she alleges with regard to the context for the speech as well as the

"audience" for it, including members of outside agencies and institutional supervisors beyond

her direct line of supervision.   *See Lane*, 134 S. Ct. at 2379 (holding that "critical question" is

whether speech is ordinarily within scope of employee's duties, not merely concerning them);

*Hanes*, 474 F. 3d at 364 (noting as relevant the fact employee communicated solely to his

superior as evidence he was speaking as public employee); *Boulton*, 795 F. 3d at 534

(considering employee's duties, impetus for speech, setting, audience and subject, speech in furtherance of ordinary responsibilities not protected). [1]

Similarly, Plaintiff has sufficiently pled that she spoke on a matter of public concern. Although she did complain about many day-to-day operations and other aspects of her job she found disconcerting, Plaintiff has pleaded that she chiefly spoke out about purported illegal activity within the institution. In her Second Amended Complaint, Walker details the conduct she reported including additional facts which, if believed by a jury, could support a finding of malfeasance or misappropriation of state funds by a public employee, including but not limited to allegations that Sanders took commissary items for herself, gave inmates free items, and falsified inventories. As pled, the Court finds that Walker has alleged conduct which could constitute matters of public concern. *Kiessel v. Olterdorf*, 459 F. App'x 510, 514 (6th Cir. 2012) ("when public employees allege that government officials break the law, their speech addresses a matter of public concern.") (citing *See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007)). As a result, Walker has satisfied her burden at the pleadings stage by stating allegations with sufficient particularity that the Court may infer her speech was made as a private citizen about a matter of public concern.

**B. Plaintiff has pled Defendants had sufficient personal knowledge**

"Once it is determined that an employee's speech was made as a citizen on a matter of public concern, *Pickerington v. Board of Education*, 391 U.S. 563, [] (1968), requires a court to balance the interests of the public employee as 'a citizen, in commenting upon matters of public

---

[1] Notably, the courts rendered all of these decisions at the summary judgment stage. Nothing in this Opinion and Order should be construed as foreclosing Defendants from testing the sufficiency of the *evidence* on these various matters. The Court at this stage simply measures the contents of the Plaintiff's allegation in her pleadings to determine whether she has stated a plausible claim.

concern, and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Handy-Clay*, 695 F.3d at 544–45.  Defendants argue that Walker has not sufficiently pled that her alleged speech motivated Defendants Burkes or Hill to take any alleged adverse employment action against her.  The Court, however, finds that accepting Plaintiff's allegations as true, Walker reported Sanders' conduct to Defendants Hill and Burkes, and was then terminated shortly thereafter.  (Amend. Compl. ¶ 22.)

Plaintiff alleges that she was terminated "[i]mmediately after Plaintiff reported Demetra Sanders and on or about September 4, 2015."  (Amend. Compl. ¶ 25.)  Although temporal proximity without more is insufficient to withstand a summary judgment motion, in connection with a motion to dismiss, "temporal proximity between the protected conduct and the adverse action creates an inference of retaliatory motive" sufficient "to survive a Rule 12(b)(6) motion to dismiss for failure to state the plaintiff's First Amendment retaliation claim." *Handy-Clay*, 695 F.3d at 546; *Paige v. Coyner*, 614 F.3d 273, 283 (6th Cir. 2010) (overturning the grant of a motion to dismiss holding, "[t]emporal proximity between the protected conduct and the adverse action by the state actor 'alone may be significant enough to constitute indirect evidence . . . to create an inference of retaliatory motive.") (citation omitted)).  Accordingly, at this stage of the litigation, Plaintiff has sufficiently pled a connection between Defendants and the adverse action taken against her.

## C.  Qualified Immunity

The doctrine of qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "Under the doctrine of qualified immunity,

'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  If a constitutional violation is found, the Court must determine whether the right is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Darrah v. Krishner*, 865 F.3d 361, 365 (6th Cir. 2017).

As discussed above, the Court finds that Plaintiff has plausibly pled a constitutional violation of her First Amendment rights.  Accordingly, at this juncture, the Court cannot conclusively determine whether Defendants are entitled to qualified immunity.  Defendants may, therefore, renew this defense at a later stage in this proceeding.

Accordingly, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint on the basis of qualified immunity is **DENIED**.

## IV.

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 37) is **DENIED**.

    **IT IS SO ORDERED**.

Date: September 8, 2017            /s/ *Elizabeth A. Preston Deavers*
                                  ELIZABETH A. PRESTON DEAVERS
                                  UNITED STATES MAGISTRATE JUDGE